UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN CHESS, et al., <br> Plaintiffs, <br> v. <br> RICHARD E. ROMINE, et al., <br> Defendants. | Case No. 18-cv-05098-JSC <br><br> **ORDER RE: DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY TO TRANSFER THE ACTION** <br> Re: Dkt. No. 9 |

Plaintiffs Stephen Chess, Lois Chess, Bruce Callander, Jeff Drawdy, and Susan Drawdy (collectively, "Plaintiffs") bring causes of action against Defendants Richard Romine and Striker Entities, LLC ("Striker") (together, "Defendants") alleging common-law fraud and violation of California Business & Professions Code § 17200 arising from Plaintiffs' investments in tax shelter vehicles managed and controlled by Defendants.[1] Now pending before the Court are Defendants' motion to dismiss Plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim and 12(b)(7) for failure to join indispensable parties, (Dkt. No. 9), and accompanying requests for judicial notice, (Dkt. Nos. 9-1, 10, 12, 13, 22).[2] Alternatively, Defendants request that the Court transfer this action to the U.S. District Court, Western District of Oklahoma, pursuant to 28 U.S.C. § 1404(a). After careful consideration of the parties' briefing, the Court concludes that oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), and GRANTS Defendants' motion to transfer the matter to the Western District of Oklahoma because

---

[1] The parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 8 & 18.)

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

four of the five Plaintiffs are defending pending actions in that district that are substantially related to the issues in this case. The Court declines to rule on Defendants' motion to dismiss because this lawsuit more properly belongs in the Western District of Oklahoma.

**BACKGROUND**

**I.  The Parties**

Plaintiffs are California residents solicited by Defendant Richard Romine to invest in tax shelter vehicles while Plaintiffs were in California. (Dkt. No. 1-1 at ¶ 10.)

Defendant Striker "is a Wyoming limited liability company, "with its principal place of business in the State of Oklahoma." (Dkt. No. 1-1 at ¶ 7.) Defendant Richard Romine is a resident of Oklahoma and "sole member and manager" of Striker.[3] (Dkt. No. 2 at ¶ 1.)

**II.  Complaint Allegations**

Defendants promote, solicit investments in, and operate "partnerships that purportedly . . . acquire oil and gas drilling rights and engage in drilling." (Dkt. No. 1-1 at ¶ 12.) Defendants promoted these partnerships "as tax shelters," soliciting Plaintiffs and others in California "through written offering memoranda and subscription agreements." (*Id.*) Plaintiffs invested in the partnerships (or "programs") with cash "plus a promissory note." (*Id.*) Subsequent to Plaintiffs' initial investments, "Defendants offered new 'programs' usually on an annual basis[,]" which Plaintiffs invested in "over the course of a number of years." (*Id.*)

Mr. Romine made several representations to each Plaintiff with the intent to induce them "to invest in Defendants' programs." (*Id.* at ¶ 13.) Mr. Romine told each Plaintiff—"either in person while meeting Plaintiffs in California or by telephone"—that "Defendants, and other entities controlled by [Mr.] Romine, would use the cash investments in each program to acquire drilling rights and to drill [oil and gas] producing wells that would generate income." (*Id.* at ¶¶ 13, 13(d).) Mr. Romine told Plaintiffs that "[t]he subscription agreements, promissory notes[,] and

---

[3] Mr. Romine is also the sole member and manager of Striker Development, LLC, Striker 2004, LLC, Striker 2005, LLC, and Striker 2008, LLC. All entities are Wyoming limited liability companies, and "holder[s] of certain of the [promissory] notes at issue" in this action. (Dkt. No. 2 at 2.) Mr. Romine is also the sole manager of The Striker Group, LLC, an Oklahoma limited liability company, and "holder of certain of the notes at issue" here. (*Id.*)

2

other documents that Plaintiffs were asked to sign in connection with the investments were necessary for the programs to qualify for the tax benefits, but did not reflect the actual obligations of Plaintiffs to Defendants." (*Id.* at ¶ 13(a).) As represented by Mr. Romine, "[d]espite the form of the promissory notes, Plaintiffs would never be obligated to make any additional payments to Defendants or the program entities, other than the initial cash invested in each program." (*Id.* at ¶ 13(c).) Thus, "the notes would not be recourse and any obligations under [the] notes would be funded from operating income earned by wells drilled using the cash investments." (*Id.*) "For tax purposes," however, Plaintiffs could claim a tax deduction for "both the cash invested in each program as well as the amount on the face of each promissory note, despite Plaintiffs not actually contributing any additional cash per the promissory notes." (*Id.* at ¶ 13(b).) Further, Defendants had "vetted" the "structure of the investments" and they "would withstand IRS scrutiny." (*Id.* at 13(e).)

Mr. Romine omitted to inform Plaintiffs that "[t]he programs had not been properly vetted as tax shelters and would [thus] put Plaintiffs at risk for IRS audits and resulting penalties and interest." (*Id.* at ¶ 14(a).) Further, Defendants "diverted" the cash investments "from drilling activities" to Mr. Romine, and "destroy[ed] records in order to make it more difficult for investors or the IRS to track how the cash invested in the programs was used." (*Id.* at ¶ 14(b),(c).)

Plaintiffs "invested in reliance on [Mr.] Romine's representations," and would not have invested "had Defendants disclosed the material facts that [Mr.] Romine failed to disclose." (*Id.* at ¶ 15). As a result of the investments:

> Some Plaintiffs have been subjected to IRS audits of the investments in Defendants' programs, resulting in lost tax deductions, penalties, and interest, as well as the costs of paying professionals in response to IRS audit. The IRS has determined that Defendants' programs are not lawfully structured to achieve the tax benefits that Defendants represented[.]

(*Id.* at ¶ 17.) Further, Defendants have "attempt[ed] to collect settlements from Plaintiffs, based on the purported obligations under the promissory notes,"[4] despite Mr. Romine's representations

---

[4] As alleged, "[o]n their face, the promissory notes were made to secure the costs of drilling operations paid for and conducted by Defendants." (Dkt. No. 1-1 at ¶ 19.)

that the notes "were non-recourse," (*Id.* at ¶ 19), and despite not having "paid for or conducted drilling operations that would entitle Defendants to call for payments" if the notes were otherwise legitimate. (*Id.* at ¶ 19.)

## II. Procedural History

Plaintiffs filed an action in the Superior Court of the State of California, County of San Francisco, on July 9, 2018. (Dkt. No. 1-1.) On August 20, 2018, Defendants removed the action to this Court pursuant to 28 U.S.C. § 1441(b) based on diversity jurisdiction. (Dkt. No. 1 at ¶ 6.) Defendants moved to dismiss Plaintiffs' complaint on August 27, 2018, (Dkt. No. 9), seeking judicial notice of 31 exhibits, (Dkt. Nos. 9-1 & 10.) Three days later, Defendants filed a supplemental declaration, (Dkt. No. 12), and supplemental request for judicial notice, (Dkt. No. 13). On September 10, 2018, the Court granted the parties' stipulation to modify the briefing and hearing schedule on Defendants' motion to dismiss and to allow Defendant to file a supplemental brief in support thereof.[5] (Dkt. No. 16.)

Defendants filed their supplemental motion to dismiss on September 18, 2018, (Dkt. No. 17), and Plaintiffs filed their opposition on October 1, 2018, (Dkt. No. 20). Defendants filed their reply on October 15, 2018, (Dkt. No. 21), seeking judicial notice of three exhibits, (Dkt. No. 22).

## REQUEST FOR JUDICIAL NOTICE

Generally, "district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). When such materials "'are presented to and not excluded by the court,' the 12(b)(6) motion converts into a motion for summary judgment under Rule 56." *Id.* (quoting Fed. R. Civ. P. 12(d)). There are, however, "two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." *Id.*

Pursuant to the Federal Rules of Evidence, a judicially noticed adjudicative fact must be one "that is not subject to reasonable dispute because it: (1) is generally known within the trial

---

[5] The stipulation provides, in part, that "Plaintiffs waive any objection to [Defendants'] supplemental brief, or the relief requested therein, on the basis that it is untimely, but reserve all other objections and arguments." (Dkt. No. 16 at 2.)

4

1  court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose
2  accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Here, Defendants request judicial notice of: (1) court filings in related actions in Oklahoma state and federal court involving the same parties; (2) a statistical report from the U.S. Courts website; (3) promissory notes given by Plaintiffs to Striker; (4) correspondence from Plaintiffs' counsel to Mr. Romine, dated September 18, 2014; and (5) correspondence from Mr. Romine to Plaintiffs. (Dkt. Nos. 9-1, 10, 12, 13, 22.)

**I.    Court Filings in Oklahoma State and Federal Actions**

Defendants request that the Court take judicial notice of the following documents related to pending actions brought by Defendants against Plaintiffs in state and federal court in Oklahoma to collect on the promissory notes: (1) Docket report from PACER, Notice of Removal, and October 2, 2018 Order denying motion to dismiss in *Striker Entities, LLC v. Bruce Callander*, U.S. District Court, Western District of Oklahoma, Case No. 5:18-cv-00508-F, (Dkt. Nos. 10-1, Ex. 5-6 & 22, Ex. 2); (2) Docket report from PACER, Notice of Removal, and October 2, 2018 Order denying motion to dismiss in *The Striker Group, LLC, et al. v. Jeffrey A. Drawdy*, U.S. District Court, Western District of Oklahoma, Case No. 5:18-cv-00509-F, (Dkt. Nos. 10-1, Ex. 7-8 & 22, Ex. 3); (3) Docket report from PACER, Notice of Removal, and October 2, 2018 Order denying motion to dismiss in *The Striker Group, LLC, et al. v. Susan A. Drawdy*, U.S. District Court, Western District of Oklahoma, Case No. 5:18-cv-00510-F, (Dkt. No. 10-1, Ex. 9-10 & 22, Ex. 3); and (4) petition filed in *The Striker Group, LLC, et al. v. Stephen M. Chess*, District Court of Pottawatomie County, State of Oklahoma, Case No. CJ-18-128, (Dkt. No. 10-1, Ex. 11).

Judicial notice is appropriate for "undisputed matters of public record, including documents on file in federal or state courts." *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal citation omitted); *see also Bennet v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002) (recognizing that courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.") Here, the proceedings in Oklahoma state and federal court are directly related to this case because they involve the same subject matter and parties. Further, Plaintiffs have not

5

1 opposed Defendants' request for judicial notice of the court filings or otherwise disputed the
2 authenticity of the documents. Accordingly, the Court grants Defendants' request for judicial
3 notice of the Oklahoma court filings.

## II. U.S. District Courts Statistical Report

Defendants request judicial notice of a statistical report from the United States Courts' publicly-available "website regarding Civil Cases Commenced, Terminated, and Pending During the 12-Month Period Ending June 30, 2018 by jurisdiction."[6] (Dkt. No. 22 at 2.) Plaintiffs have not opposed judicial notice of the report or otherwise disputed its authenticity. Accordingly, the Court grants judicial notice of the report because it is an undisputed "matter of public record." *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

## III. Promissory Notes

Defendants request judicial notice of 17 promissory notes given by Plaintiffs to Defendants (or related Striker entities) between 1998 and 2008. (Dkt. Nos. 9-1, Ex. 1-16, 18 & 10 at ¶¶ 12-27, 29.) In doing so, Defendants conflate judicial notice with the incorporation-by-reference doctrine. (*See* Dkt. No. 10 at 2) ("Judicial notice of the promissory notes . . . is proper because the promissory notes . . . are incorporated by reference into Plaintiffs' Complaint."). The Court agrees, however, that the promissory notes are incorporated by reference because the notes are referenced extensively in the complaint and underlie Plaintiffs' fraud and UCL claims.[7] *See United States v. Ritchie*, 342 F.3d 903, 908 ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

Because the Court concludes that the related court filings warrant transfer of this case to the Western District of Oklahoma, it need not address Defendants' request for judicial notice of the proffered correspondence from Plaintiffs' counsel to Mr. Romine dated September 18, 2014, and the correspondence from Mr. Romine to Plaintiffs.

---

[6] The report is available at http://www.uscourts.gov/statistics/table/c-1/statistical-tables-federal-judiciary/2018/06/30.
[7] Eight of the 17 promissory notes are also included as attachments to the court filings in the state and federal actions in Oklahoma.

6

**DISCUSSION**

**I.    Transfer Pursuant to 28 U.S.C. § 1404(a)**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."[8]  28 U.S.C. §1404(a).

Defendants argue that transfer of this action to the U.S. District Court for the Western District of Oklahoma is warranted "because many of the promissory notes which are the subject of this Action" contain a forum-selection clause providing that "all suits related to liability under this Note shall be filed in Shawnee, Oklahoma." (Dkt. No. 9 at 3.)  Further, Defendants insist that "transfer is necessary to avoid duplicative litigation, effect judicial economy[,] and prevent waste of time and money." (*Id.*)

**A.    The Forum-Selection Clause is Inapplicable to Plaintiffs' Claims**

"When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine Constr. Co., Inc. v. United States Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 62 (2013).  In *Atl. Marine*, the Supreme Court noted that "[o]rdinarily, the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Id*. at 62-63 (quoting §1404(a)).  When a contract contains a valid, mandatory forum-selection clause, however, "the calculus changes" because the clause "represents the parties' agreement as to the most proper forum." *Id*. at 63.

"Forum selection clauses can be equally applicable to contractual and tort causes of action." *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 (9th Cir. 1988).  However, "[w]hether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract." *Id.*  Here, Plaintiffs' claims for fraud and violation of the UCL do not relate to interpretation of the subject promissory notes; instead, the

---

[8] There is no dispute that this action "might have been brought" in the Western District of Oklahoma.  Indeed, in the three matters pending in that district, the court recently denied Mr. Callander's, Mr. Drawdy's, and Ms. Drawdy's motions to dismiss for lack of personal jurisdiction. (*See* Dkt. No. 22, Ex. 2-3.)

7

1   claims are premised on alleged misrepresentations and omissions intended to induce Plaintiffs to
2   invest *despite* the language of the promissory notes. In other words, Plaintiffs' claims are
3   unrelated to a "conflict over the interpretation of the contract," and thus, outside the scope of the
4   forum-selection clause. *Cf. id.* (finding forum-selection clause applicable to tort claims because
5   they "relate[d] in some way to rights and duties enumerated in the [contract]" and could not "be
6   adjudicated without analyzing whether the parties were in compliance with the contract.")

The Court's conclusion is supported by the plain language of the clause, which provides that "[a]ll suits related to liability *under* this Note shall be filed in Shawnee, Oklahoma." (*See* Dkt. No. 9-1, Ex. 1-2, 7-8, 11, 13, 16) (emphasis added.) By its plain language, the clause clearly covers only those suits concerning interpretation or enforcement of the note itself (i.e., "related to liability *under* this Note"). *See Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922 (9th Cir. 2011) (distinguishing between clauses "arising under" an agreement, which are interpreted narrowly and cover only those disputes "relating to the interpretation and performance of the contract itself," and clauses "relating to" the agreement, which are interpreted broadly). Conversely, the plain language of the clause does not cover "all suits *related to* the Note," such as tort claims alleging fraudulent inducement. *See Yei A. Sun*, 901 F.3d at 1086 (finding fraud claim covered by forum-selection clause "[b]ecause the clause covers 'any disputes . . . *related to* this Agreement,'" and thus "applies to any dispute that has some logical or causal connection to the parties' agreement.")

Further, only seven of the subject notes contain the clause. (*See* Dkt. No. 9-1, Ex. 1-2, 7-8, 11, 13, 16.) Eight of the notes do not contain a forum-selection clause, (*see id.*, Ex. 4-6, 9-10, 14-15, 18), while two state that "[a]ll suits . . . shall be filed in Dallas, Texas," (*see id.*, Ex. 3, 12). In sum, the forum-selection clause is inapplicable to Plaintiffs' claims.

### B. Convenience and Justice Factors Favor a Transfer

In the absence of an applicable forum-selection clause, the Court must "weigh the relevant factors and decide whether, on balance, a transfer would serve the convenience of parties and witnesses and otherwise promote the interest of justice." *Atl. Marine*, 571 U.S. at 62-63 (internal quotation marks and citation omitted). Where, as here, an action could have been brought in the

8

target district, courts undertake an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation marks and citation omitted). District courts have broad discretion in conducting this analysis. *See Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007); *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). To determine convenience and fairness, courts in this District commonly consider the following factors:

> (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) ease of access to evidence; (5) familiarity of each forum with applicable law; (6) feasibility of consolidation of other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time to trial in each forum.

*Martin v. Global Tel\*Link Corp.*, No. 15-cv-00449-YGR, 2015 WL 2124379, at \*2 (N.D. Cal. May 6, 2015) (collecting cases); *see also Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001) (same). "No single factor is dispositive." *Ctr. for Biological Diversity v. Kempthorne*, No. C 08-1339 CW, 2008 WL 4543043, at \*2 (N.D. Cal. Oct. 10, 2008). Instead, "[w]eighing of these factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge." *Ventress*, 486 F.3d at 1118.

The burden is on the moving party to show that the balance of convenience and fairness factors favor transfer. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). The Court addresses each factor in turn and concludes that Defendants have met that burden.

### 1. Plaintiffs' Choice of Forum

In general, "a plaintiff's choice of forum is afforded substantial weight." *Carolina Cas. Co. v. Data Broad. Corp.*, 158 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001). Here, the Court recognizes the "strong presumption in favor of" Plaintiffs' choice of forum in this District. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). That presumption may be overcome, however, "when the private and public interest factors clearly point towards trial in the alternative forum." *Id.* As discussed below, the remaining factors do so in light of the pending actions in the Western District of Oklahoma.

//

### 2. Convenience of the Parties

For this factor, the Court must consider the relative convenience of each forum as it pertains to each party and determine the least inconvenient forum. *See Arete Power, Inc. v. Beacon Power Corp.*, No. C 07-5167 WDB, 2008 WL 508477, at *6 (N.D. Cal. Feb. 22, 2008) ("The law requires us to examine the convenience of all the parties, not just the plaintiff—and to try and identify the forum where the net inconvenience (to all parties) would be least.") Obviously, the Western District of Oklahoma is more convenient for Defendants because Mr. Romine is a resident of Oklahoma and Striker has its principal place of business in that state, and the Northern District of California is more convenient for Plaintiffs because they reside in California. Plaintiffs further argue that "California is more convenient, since there are many more individual plaintiffs than there are Defendants." Although true, this fact does not affect the Court's analysis because four of the five Plaintiffs are *already* litigating in the Western District of Oklahoma.[9] In other words, transferring this action to that district will not *further* inconvenience the majority of Plaintiffs because they must travel and litigate in that forum regardless. This is especially true given that the Western District of Oklahoma recently denied Mr. Callander's, Mr. Drawdy's, and Ms. Drawdy's motions to dismiss for lack of personal jurisdiction. (*See* Dkt. No. 22, Ex. 2-3.)

Conversely, maintaining their action in this District will require all Plaintiffs except Ms. Chess to fight a two-front war: defending the actions brought against them in Oklahoma while also prosecuting this action in California. The Court cannot reasonably conclude that it would be more inconvenient to the majority of Plaintiffs to consolidate all actions in one forum by transferring this action. It follows that Defendants would also be subject to greater inconvenience if required to litigate in two forums. Thus, on balance, the net inconvenience to *all* parties would be least in the Western District of Oklahoma.

### 3. Convenience of the Witnesses

This factor similarly weighs in favor of transfer. Plaintiffs argue that because "Defendants

---

[9] Plaintiff Lois Chess is not a party to the suit brought by Striker against Plaintiff Stephen Chess in Oklahoma state court. (*See* Dkt. No. 10-1, Ex. 11.)

10

have identified no witnesses for whom traveling to California would be inconvenient," this factor weighs against a transfer. Although it is true that Defendants have not identified witnesses, it is also true that *no* party has identified any potential witnesses outside of Plaintiffs and Mr. Romine. Further, because the Oklahoma actions involve the same promissory notes at issue in the instant action, it is highly likely that the parties will present the *same* witnesses and evidence in support of their respective claims and defenses in all actions. Absent a transfer by this Court, *all* witnesses will be required to travel to two forums to give the same testimony—that result is not convenient for any witness.

### 4. Ease of Access to Evidence

Defendant insists that this factor weighs in favor of transfer because "[t]he documents, records, and information [that] pertain to the investments made by Plaintiffs under the . . . promissory notes are maintained by Striker in Shawnee, Oklahoma." (Dkt. No. 9 at 25.) As recognized by Plaintiffs, however, "[t]he location of documents is no longer relevant for the purposes of [the] convenience analysis." (Dkt. No. 20 at 14) (citing *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 780 (N.D. Cal. 2014) (noting that "the location of documents is increasingly irrelevant in the age of electronic discovery, when thousands of pages of documents can be easily digitized and transported to any appropriate forum.")); *see also TransPerfect Global, Inc. v. Motionpoint Corp.*, No. 10-02590 CW, 2010 WL 3619565, at *4 (N.D. Cal. Sept. 13, 2010) ("The weight of this factor has decreased as technological advances in document storage and retrieval have greatly reduced the burden of transporting documents between districts.")

Accordingly, this factor is neutral.

### 5. Familiarity of the Forum with the Applicable Law

Plaintiffs' fraud and UCL claims are governed by California law. A district court in California is obviously more familiar with California state laws than the Western District of Oklahoma.[10] This factor thus weighs in favor of denying Defendants' motion, although it does not

---

[10] "[W]hen a case is transferred pursuant to 28 U.S.C. § 1404(a), [a court] must apply the choice-of-law rules of the State from which the case was transferred." *Piper Aircraft Co.*, 454 U.S. at 243 n.8 (citing *Van Dusen v. Barrack*, 376 U.S. 612 (1964)).

11

weigh heavily. *See Atl. Marine*, 571 U.S. at 67-68 ("[F]ederal judges routinely apply the law of a State other than the State in which they sit."); *see also Foster v. Nationwide Mut. Ins. Co.*, No. C 07-04928 SI, 2007 WL 4410408, at *6 (N.D. Cal. Dec. 14, 2007) (noting that "other federal courts are fully capable of applying California law").

### 6. Feasibility of Consolidation of Other Claims

Defendants insist that "[c]onsolidation of this Action with the Oklahoma actions is . . . feasible and will promote judicial economy." (Dkt. No. 21 at 17.) Plaintiffs acknowledge that "this case could be consolidated with the Oklahoma cases," but argue that "doing so would add complexity." (Dkt. No. 20 at 15.) The Court disagrees. As discussed in detail below, the same facts are at issue in all actions, and with the exception of Ms. Chess, all actions involve the same parties. Accordingly, this factor weighs in favor of a transfer.

### 7. Local Interest in the Controversy

Defendants argue that a transfer is appropriate because "there is little local interest in the lawsuit given that it involves Plaintiffs' participation in drilling programs located in Oklahoma, involving entities headquartered in Oklahoma and operated in Oklahoma by a resident of Oklahoma." (Dkt. No. 21 at 14-15.) Plaintiffs—all residents of California—oppose a transfer because "California has an interest in enforcing its consumer protection laws." (Dkt. No. 20 at 15.) The Court agrees that California has a local interest in this action, but concludes that this factor is neutral given the pending actions in Oklahoma.

"A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985). Here, Defendants solicited investments from California residents and the promissory notes memorializing those investments were executed in California. Plaintiffs allege that their investments were fraudulently induced in violation of California state law. Thus, the residents of California and courts therein have an obvious interest in this dispute.

The Western District of Oklahoma also has a local interest in this dispute, however, given that: (1) the pending actions in that court concern the same transactions and promissory notes at issue here; (2) Mr. Romine is an Oklahoma resident; and (3) Striker is headquartered in that state.

Oklahoma residents and courts have an interest in ensuring that in-state corporations do not engage in fraudulent practices, even when those practices target out-of-state residents. In light of the pending litigation in Oklahoma, the local interest factor is neutral.

### 8. Relative Court Congestion and Time to Trial

This factor weighs in favor of transfer. Defendants offer statistics about the relative congestion of each district demonstrating that as of June 30, 2018, there were 8,768 total civil actions pending in the Northern District of California versus 1,078 pending in the Western District of Oklahoma.[11] United States Courts, *Statistical Tables For The Federal Judiciary*, (June 30, 2018), http://www.uscourts.gov/statistics/table/c-1/statistical-tables-federal-judiciary/2018/06/30. Neither party has submitted any evidence regarding the relative time to trial. Based on the disparity in relative congestion alone, however, this factor weighs in favor of transfer.

\*\*\*

On balance, Defendants have met their burden of demonstrating that a transfer is appropriate. The factors weighing against a transfer (i.e., choice of forum and familiarity with applicable law) are outweighed both by factors favoring a transfer (i.e., convenience of parties and witnesses, feasibility of consolidation of claims, and relative court congestion) and the Court's consideration of the interest of justice and concern for judicial economy. Simply put, failure to transfer this case will result in duplicative litigation that wastes judicial resources and burdens all parties and the public with "unnecessary inconvenience and expense." *See Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (noting the purpose of Section 1404(a) is to "prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.") (internal quotation marks and citation omitted).

## II. First-to-File Rule

Although not raised by the parties, transfer is also warranted under the "first-to-file rule."

---

[11] Pursuant to Federal Rule of Evidence 201(b), the Court takes judicial notice of the fact that there are 33 judges on the bench in this District, *see* https://www.cand.uscourts.gov/judges, compared with 14 سitting in the Western District of Oklahoma, *see* http://www.okwd.uscourts.gov/chamber-listings/. Based on the total amount of cases pending in each district, there are roughly 266 cases per judge in this District versus 77 per judge in the Western District of Oklahoma.

The parties and issues are substantially similar, and the interests of judicial economy and consistency favor a transfer.

The principle of federal comity refers to a court's discretion to decline jurisdiction when the same issues are already pending before another federal court. "[T]hough no precise rule has evolved, the general principle is to avoid duplicative litigation" in the interests of judicial economy and avoiding inconsistent results. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). The Ninth Circuit employs a "first-to-file" rule to implement the principle: district courts have discretion to transfer, stay, or dismiss an action if the same parties and issues are already at issue in a proceeding before another district court. *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982). The parties and issues in each action need only be "substantially similar." *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989) (internal quotation marks and citations omitted). In determining whether to apply the rule, courts must consider the "chronology of the lawsuits, similarity of the parties, and similarity of the issues." *Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015). The analysis "should be driven to maximize economy, consistency, and comity." *Id.* (internal quotation marks and citation omitted).

### A. Chronology of Lawsuits

Striker filed separate lawsuits in the District Court of Pottawatomie County, State of Oklahoma, against Plaintiffs Bruce Callander, Stephen Chess, Jeffrey Drawdy, and Susan Drawdy respectively on April 3, 2018. On May 23, 2018, Plaintiffs (except Mr. Chess) removed the actions against them to the U.S. District Court for the Western District of Oklahoma. Plaintiffs then filed suit against Defendants in California state court on July 9, 2018, and Defendants removed the action to this Court on August 20, 2018. Striker is clearly the first to file; thus, the chronology of lawsuits supports a transfer.

### B. Similarity of Parties

"[T]he first-to-file rule does not require exact identity of the parties," but rather, "only substantial similarity of the parties." *Kohn*, 787 F.3d at 1240. Here, the parties are substantially similar in that Striker is a plaintiff in all four pending actions in Oklahoma, and all Plaintiffs in

14

this matter—except Ms. Chess—are defendants in those actions. *See Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 959 n.6 (E.D. Cal. 2011) ("The rule is satisfied if some [of] the parties in one matter are also in the other matter, regardless of whether there are additional unmatched parties in one or both matters.").

### C. Similarity of Issues

The Court must next consider whether the issues in each case are substantially similar. *Nakash*, 882 F.2d at 1416; *see also Kohn*, 787 F.3d at 1240 ("The issues in both cases also need not be identical, only substantial similar."). This factor is satisfied if there is "substantial overlap" between the two suits regarding the claims and remedies sought. *Kohn*, 787 F.3d at 1241. Here, there is substantial overlap because the same promissory notes are at issue—Defendants brought suit in Oklahoma to enforce the terms of the notes, while Plaintiffs in this matter allege that the same promissory notes were induced by fraud and not enforceable. Thus, there is a substantial overlap in the evidence that will be presented in the Oklahoma suits and the instant action. Such overlap creates a high likelihood of duplicative litigation and a risk of inconsistent results, precisely the risks the first-to-file rule seeks to avoid.

In sum, the first-to-file factors weigh in favor of transferring this case to the Western District of Oklahoma, and a transfer clearly serves to "maximize economy, consistency, and comity." *Id.* at 1240.

### CONCLUSION

For the reasons set forth above, the Court GRANTS Defendants' motion to transfer to the Western District of Oklahoma. It does not make sense for this Court to address Defendants' motion to dismiss given that this lawsuit more properly belongs in Oklahoma; accordingly, the Court declines to rule on the motion to dismiss and transfers the matter.

**IT IS SO ORDERED.**

Dated: November 2, 2018

JACQUELINE SCOTT CORLEY
United States Magistrate Judge